## 58694. FEARS v. THE STATE.

Birdsong, Judge.
Appellant Walter Anthony Fears was indicted for armed robbery and aggravated assault but convicted of attempted armed robbery and aggravated assault, for the act of shooting Charles Harris, a cab driver, five times in the head. The evidence shows that the cab company dispatcher had directed Charles Harris to a trailer address, where he picked up a man who was wearing a striped tee-shirt and carrying a green canvas tote bag (appellant herein). After driving to a destination at the appellant's direction, Mr. Harris stopped the cab and turned to advise the appellant the fare was 75 cents. Mr. Harris saw the appellant briefly, then turned back and again saw the appellant in the rear view mirror just before the appellant got out and stood at the driver's door. At that

point, appellant shot Charles Harris five times. Mr. Harris' foot slipped off the brake pedal and the cab rolled and turned over into a ditch. When the police arrived, they found bloody money scattered about the inside of the cab, and one dollar bill hanging from Mr. Harris' left shirt pocket, where he kept his money folded. Mr. Harris had had $36 in small bills before the shooting; only $28 was recovered. Within 35 minutes after the police were called to the scene, the police had been to the point of origin and obtained from a woman there the description and name of the man who had just left to get in a cab, and had received a telephone call from another woman at the trip's destination who stated that her brother who had shot the cab driver had left the gun at her house and that she wanted the police to come "get it out of her house." When the police arrived back at that address, across from the scene of the crime, the woman, who is appellant's sister, lead them to a bedroom and pointed to a green canvas bag on a bed, and told them again that her brother Walter had left the bag there and the gun was in it and she wanted the gun out of her house. The officers opened the bag, removed a striped tee-shirt, a gun, a blood-spattered tissue paper, and other articles which were later introduced at trial. At trial, Charles Harris positively identified the appellant as his assailant. Upon convictions for aggravated assault and criminal attempt to commit armed robbery, appellant urges error in the trial court's denial of his motion to suppress, and contends that the evidence wholly fails to support a conviction for attempted armed robbery. *Held:*

1. Appellant argues that his tote bag, which he had left at his sister's house, was a container in which he had a legitimate expectation of privacy, as in the footlocker and unlocked suitcase in United States v. Chadwick, 433 U. S. 1 (97 SC 2476, 53 LE2d 538) and Arkansas v. Sanders, 25 Crim. L. R. 3196, dec. June 20, 1979. (See especially, United States v. Block, 590 F2d 535, 539.) However, appellant left his bag in his sister's house, not his own. He had no proprietary interest in the house and would have no standing to object to a search to which his sister consented (*Brown v. State*, 240 Ga. 274, 275 (240 SE2d 63)). This is not a case where the "absent target" and the consenting third party have common authority over and mutual use of

premises. See United States v. Matlock, 415 U. S. 164, 171 (94 SC 988, 39 LE2d 242); *Barrow v. State*, 235 Ga. 635, 637 (221 SE2d 416). Therefore, the principle applied in such cases that the third party has the right to permit inspection in his own right and that the absent target has assumed the risk that the third party may grant this permission to others (United States v. Matlock, supra; Frazier v. Cupp, 394 U. S. 731, 740 (89 SC 1420, 22 LE2d 684); United States v. Bethea, 598 F2d 331, 335; United States v. Block, supra, *Barrow v. State*, supra) applies even more clearly in this case. Appellant contends, nevertheless, that he had a reasonable expectation of privacy as to the contents of the tote bag itself. We disagree. After committing a violent crime, appellant left his bag in a house belonging to another and over which he had no authority or proprietary interests, and no reasonable expectation of privacy generally; the owner knew of or suspected the crime and apparently examined the bag herself and discovered the weapon. She had a right to have it removed from her house and had the right to permit the police to open the bag to get it out. Moreover, when he left his bag in his sister's house, appellant did not give her any instructions as to what to do with it and cannot object to her permitting its contents to be removed (see *Leach v. State*, 143 Ga. App. 598, 601 (239 SE2d 177)). Appellant's relinquishment of all control over the bag in the house of another was tantamount to an abandonment. The circumstances wherein within minutes after appellant shot the cab driver in front of her house, appellant's sister called the police in some distress and stated that he had left *the gun* in her house and asked them to *come get it*, negate any inference that appellant could have a reasonable expectation of privacy in the contents of the bag which he abandoned in *her* house. It was otherwise in United States v. Block, supra, because the son lived in a room in his mother's house and therefore had a right to object to the search of his closed footlocker in that room and was not held to have assumed the risk that his mother might permit others to search it.

The removal of the gun under these circumstances here does not qualify as a search, and the seizure was not unreasonable. See Coolidge v. New Hampshire, 403 U. S.

443, 447-449 (91 SC 2022, 29 LE2d 564). See *Dickerson v. State*, 151 Ga. App. 429.

We hold that appellant did not have a reasonable expectation of privacy in the contents of his bag when he left it at his sister's house, and not at his own; and because it was in her sole control she had a right to examine and remove it or to direct others to examine and remove it. See especially *Cuevas v. State*, 151 Ga. App. 605.

Further, even if the admission of the gun into evidence had been error, other evidence in this case established appellant's guilt so conclusively that its admission was harmless beyond a reasonable doubt. *Kirkland v. State*, 141 Ga. App. 664 (234 SE2d 133).

2. Appellant urges that the evidence is insufficient as a matter of law to support the conviction. In particular, because the jury did not convict for the indicted offense, armed robbery, but convicted the appellant of the lesser included offense of criminal attempt to commit armed robbery, appellant contends the jury obviously did not find the evidence sufficient to conclude that any property was taken, and more significantly, that there was no evidence of any "substantial step toward the commission of the crime" of armed robbery (Code § 26-1001, defining "criminal attempt"). Whatever the jury inferred or discounted from the fact that $8 or $9 was missing after appellant shot Mr. Harris, the evidence is that Mr. Harris' money, which he had kept folded in his shirt pocket, was scattered about the car. Appellant shot Mr. Harris, five times in the head, without having paid his 75 cent taxi fare; the appellant did not know his victim; and there is, of course, no evidence of prior hostility between them. Under these circumstances, we conclude that the common experience of modern mankind allows only one reasonable and rational conclusion to be derived by the jury, that the act of shooting Mr. Harris five times in the head was a substantial step toward the commission of armed robbery. It is not necessary for the state to show that appellant expressed an intent to rob in so many words, or declared a purpose to carry the intent into effect, for the jury to arrive at the conclusion he so intended. The intention may be gathered from the circumstances of the case as proved. In seeking the motives of human conduct,

inferences and deductions may properly be considered where they flow naturally from the facts proved. *Gragg v. State*, 74 Ga. App. 719, 722 (41 SE2d 274); Code § 26-605. To constitute an attempt, there must be an act done in pursuance of the intent, and more or less directly tending to the commission of the crime. The act must be inexplicable as a lawful act, and more than mere preparation, "sufficient both in magnitude and in proximity to the fact intended, to be taken cognizance of by the law that does not concern itself with things trivial and small." *Groves v. State*, 116 Ga. 516, 518 (42 SE 755). The essential elements of criminal attempt are that the act (the "substantial step") must be such as would be proximately connected with the completed crime, and there must be an apparent possibility to commit the crime in the manner proposed. *Groves,* supra, p. 517. The circumstances wherein the accused shoots five times a person known or expected generally to carry sums of money, where no other logical or reasonable explanation appears, are sufficient from which a reasonable trier of fact could rationally find the essential elements of the crime of attempt to commit armed robbery beyond a reasonable doubt, Jackson v. Virginia, — U. S. — (99 SC 2781, 61 LE2d 560); *Jackson v. State,* 152 Ga. App. 441 See especially on this issue *Bell v. State*, 118 Ga. App. 291 (163 SE2d 323). There being sufficient evidence to authorize the verdict, this court has no authority to set the verdict aside. *Lyle v. Prade,* 20 Ga. App. 374, 377 (93 SE 20).

*Judgment affirmed. Quillian, P. J., and Smith, J., concur.*

SUBMITTED OCTOBER 18, 1979 — DECIDED DECEMBER 4, 1979 — REHEARING DENIED DECEMBER 19, 1979 —

*Robert Peckham,* for appellant.
*Harry N. Gordon, District Attorney, B. Thomas Cook, Jr., Assistant District Attorney,* for appellee.